The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: September 30 2021

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 19-33968 |
| | ) | |
| Robert L. Moody, Jr., | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | Hon. Mary Ann Whipple |
| | ) | |

## MEMORANDUM OF DECISION

This case is before the court on Debtor's Motion to Avoid Judicial Lien on Real Estate [Doc. # 31] ("Motion"), Creditor Kingston Care Center of Perrysburg, LLC's Motion to Strike Debtor's Motion to Avoid Judgment Lien [Doc. # 34], which is being construed as a response to Debtor's Motion,[1] Creditor's Supplement to the Motion to Strike Debtor's Motion to Avoid Judgment Lien [Doc. # 45], and a Joint Stipulation of Facts Regarding Motion to Avoid Judicial Lien on Real Estate [Doc. # 52].

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11, as well as over proceedings that arise in this case, such as the Motion, pursuant to 28 U.S.C. § 1334(b). The case and all proceedings arising in it have been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The Motion is a core proceeding that this court may hear and determine because it involves a request to avoid a creditor's lien. 28 U.S.C. § 157(b)(1), (b)(2)(K) and (O). Notwithstanding the court's statutory authority to decide the Motion, it will be dismissed. The court lacks jurisdiction to decide it because it has not been filed by a party with standing.

---

[1] At the March 9, 2021 hearing the court noted it was construing the Creditor's motion as the opposition to Debtor's Motion to Avoid Judicial Lien "rather than as a pleading necessitating separate required relief should it not be well taken . . ." [Doc. # 48].

## BACKGROUND

Debtor filed a voluntary petition for relief under Chapter 7 on December 13, 2019. [Doc. # 1]. On May 20, 2020, the court entered Debtor's discharge [Doc. # 23], and the Clerk closed the case on May 26, 2020, [Doc. # 25].

On December 3, 2020, Debtor moved to reopen this case to file a motion to avoid a judgment lien. [Doc. # 26]. The court granted Debtor's motion and reopened this Chapter 7 case on December 29, 2020, directing that Debtor's motion to avoid lien be filed within 14 days. [Doc. # 29]. After the motion to reopen this case was filed, but before it was granted, Debtor died on December 25, 2020. The court was not made aware of Debtor's death before it granted the motion to reopen this case.

On January 12, 2021, after Debtor's death, counsel filed the Motion. [Doc. #31].

The court held two hearings on the Motion at which it heard the arguments of counsel, based on which it determined that there did not appear to be disputed issues of fact. The parties subsequently filed their Joint Stipulation of Facts Regarding Motion to Avoid Judicial Lien on Real Estate. [Doc. # 52].

The parties stipulate to the following facts that predate Debtor's Chapter 7 petition for relief filed on December 13, 2019:

1. On May 3, 2018, Debtor executed and recorded a Transfer on Death Designation Affidavit with the Lucas County Recorder's office regarding 2446 Maplewood Avenue, Toledo, Ohio 43620;

2. On August 6, 2019, Creditor recorded a judicial lien against Debtor with the Lucas County Court of Common Pleas, known as Judgment Lien No. G-4801-LN-0201907452.

[*Id*.].

The parties stipulate to the following facts that that occurred after closure of this case on May 26, 2020:

6. On or before December 3, 2020, Debtor retained Attorney Scott J. Saum to seek an order to avoid Creditor's judgment lien;

7. On December 3, 2020, Debtor filed a Motion to Reopen Chapter 7 Case to seek an order avoiding Creditor's judgment lien;

8. On December 25, 2020, Debtor passed away and as a result of his death, 2446 Maplewood Avenue, Toledo, Ohio 43620 transferred ½ to Robert L. Moody III, ½ to Pascha Williams, and a life estate to Vanessa Jenkins by operation of law pursuant to the Transfer on Death Designation Affidavit;

[*Id.*].

The parties stipulate to the following facts that that occurred after Debtor's Motion was filed on January 12, 2021, and Creditor's response was filed on January 21, 2021:

12. On February 2, 2021, Robert L. Moody, III, executed an Affidavit of Confirmation pursuant to R.C. 5302.222. He subsequently recorded said Affidavit of Confirmation with the Lucas County Recorder's office on February 9, 2021;

13. On February 22, 2021, Creditor filed a Supplement to Motion to Strike Debtor's Motion to Strike Debtor's Motion to Avoid Judgment Lien, attaching copies of the Transfer on Death Designation Affidavit and the Affidavit of Confirmation, which included a copy of Debtor's Certificate of Death.

[*Id.*].

## LAW AND ANALYSIS

The Bankruptcy Code establishes grounds for avoiding certain liens that impair an exemption to which a debtor is entitled. Specifically, § 522(f) provides in relevant part as follows:

(1) Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (A) A judicial lien . . .

11 U.S.C. § 522(f). The procedure for avoiding a lien under § 522(f) is addressed in Bankruptcy Rule 4003(d). As here, a closed Chapter 7 case may be reopened under 11 U.S.C. § 350(b) to file a motion under Rule 4003(d) seeking lien avoidance where the delay was not prejudicial to the lien holder. *See In re McCoy*, 560 B.R. 684 (B.A.P. 6th Cir. 2016). *Cf. In re Horvath*, Case No. 10-60520, 2021 WL 371771 (Bankr. N.D. Ohio Feb. 2, 2021) (lien avoidance denied where creditor prejudiced by reopening and request to avoid pre-petition judicial lien not filed until ten years after the Chapter 7 case was closed).

In *Farrey v. Sanderfoot*, 500 U.S. 291, 295-96 (1991), the Supreme Court noted three conditions that must be met to avoid a judgment lien under § 522(f)(1)(A): (1) the lien must be a judicial lien; (2) the lien must attach to a debtor's pre-existing interest in property; and (3) the lien must impair an exemption to which debtor would otherwise be entitled. *See In re Chiu*, 304 F.3d 905, 908 (9th Cir. 2002); *In re Jerew*, 415 B.R. 303, 306 (Bankr. N.D. Ohio 2009). It is a debtor's burden to establish that each of these conditions exist. *In re Jerew*, 415 B.R. at 306; *In re Irwin*, 338 B.R. 839, 851 (E.D. Cal. 2006).

The first two *Farrey* conditions for lien avoidance are met. There is no dispute that Kingston's judgment lien is a "judicial lien" within the meaning of § 522(f)(1)(A) and as defined in § 101(36), (37)

3

of the Bankruptcy Code, 11 U.S.C. § 101(36), (37). Nor is there any dispute that Debtor had an interest in the real property at 2446 Maplewood Avenue before Kingston filed its certificate of judgment lien on August 6, 2019, upon which it attached under Ohio law to all of Debtor's real property interests in Lucas County. Ohio Rev. Code § 2329.02. Nor has any argument been raised that if Debtor is entitled to an exemption, it is not impaired by Kingston's judgment lien. *See* 11 U.S.C. § 522(f)(2) (statutory impairment formula).

Rather Kingston opposes the request to avoid its judgment lien, first on the merits under § 522(f) because, it argues, the Ohio homestead exemption alleged to be impaired by Kingston's judgment lien died with Debtor. Second, Kingston argues that Counsel's filing of the Motion after Debtor's death amounts to an unauthorized and void act, as he had no client to represent when it was filed on January 12, 2021. Both arguments are based on the fact of Debtor's death after this case was reopened. Instead, the court finds that a more fundamental inquiry framed in terms of standing under Article III of the U.S. Constitution is necessary because it implicates the court's jurisdiction.

The U.S. Constitution empowers federal courts to decide "controversies" and "all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States." U.S. Const. art. III, § 2. Consistent with the case-and-controversy requirement, several justiciability doctrines limit federal judicial power, the most prominent being standing. To have standing a plaintiff, in this context a movant, must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-61 (1992). *See also, In re Dinoto*, 576 B.R. 835, 838 (Bankr. E.D. Mich. 2017) (to have standing in a bankruptcy case, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings). To satisfy the requirement of a cognizable injury in fact, the claimant (movant in this case) must establish the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quoting *Lujan,* 504 U.S. at 560).

In the context of a statutory right, the Supreme Court in *Spokeo* rejected the proposition that a claimant automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right because Article III requires a concrete injury even in the context of a violation of a statute. *Id.* at 341. Also, in the context of a right created by statute, the Supreme Court more recently emphasized that "[c]ongress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III…." *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2202 (2021). And further,

4

> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.

*Id.* at 2205.

While the court ultimately finds that the Motion has not been brought by a party with standing (and more particularly a party with standing who is also a real party in interest), it is not just because Debtor died before Counsel filed it. The inquiry instead turns on operation of the Transfer on Death Designation Affidavit under Ohio law. The standing inquiry is not a merits inquiry. A merits defect deprives a court of subject matter jurisdiction only if the claim is utterly frivolous. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89 (1998). But to explain why Debtor's death before Counsel filed the Motion is not alone determinative of standing, it is necessary to address the law around avoidance of a judicial lien. Moreover, this is not a case, as also shown below, where the claim is utterly frivolous as an alternative basis upon which the court is deprived of jurisdiction to decide it. Simply, Kingston's first argument misapprehends the impact of Debtor's death on application of § 522(f) where an exemption is claimed to be impaired by a judicial lien.

**Did the Judgment Lien Impair an Exemption to Which Debtor was Entitled?**

On his bankruptcy Schedule A, Debtor listed two parcels of real property located in Toledo, both owned by him in fee simple. [Doc. # 1, pages 2, 10, 11].[2] He scheduled property at 2446 Maplewood Avenue, identified as a duplex or multi-unit building and as his residence, and property at 2450 Maplewood Avenue, identified as land only. On his bankruptcy Schedule C, Debtor claimed a separate exemption in each parcel. [Doc. # 1, p. 16]; *see* Fed. R. Bankr. P. 4003(a). For his residence at 2446 Maplewood Avenue, Debtor claimed an exemption under the Ohio homestead exemption statute, Ohio Rev. Code § 2329.66(A)(1), in the amount of $63,100.00, which is the entire scheduled value of the property. For the land at 2450 Maplewood Avenue, Debtor likewise claimed an exemption under the Ohio

---

[2] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

homestead exemption statute, in the amount of $11,600, which is the entire scheduled value of the property. The record is silent on the relationship between the two parcels.

Although he identified the Kingston lawsuit and judgment on his Statement of Financial Affairs, [Doc. # 1, p. 33], Debtor stated on his Schedule D that he had no secured creditors and thus did not list Kingston's judgment lien there, [Doc. # 1, p. 18]. Kingston also appears on Debtor's Schedule F as an unsecured creditor. The case record shows that Kingston was given notice of commencement of Debtor's Chapter 7 bankruptcy case. [Doc. ## 5, 8].

The case docket also shows that there were no objections to Debtor's claimed exemptions filed. The deadline for doing so subject to exceptions that do not apply here was 30 days after the meeting of creditors was concluded. *See* Fed. R. Bankr. P. 4003(b)(1). The meeting of creditors was held and concluded on January 20, 2020, making the deadline for objecting to exemptions February 19, 2020. Both claimed exemptions became final after the deadline passed without objection, whether the land at 2450 Maplewood is part of Debtor's residence or not.

The Motion refers only to avoidance of Kingston's judicial lien as against the property at "2446 Maplewood Avenue, Toledo, OH 43620, Maplewood Addition Lot 39." [Doc. # 31, p. 2]. Likewise, the stipulated facts refer only to the 2446 Maplewood address. [Doc. # 52]. The Transfer on Death Designation Affidavit ("Affidavit") refers to Lots 39 and 40 in the legal description, but only to the 2446 Maplewood address in the first paragraph. [Doc. # 45, Ex. B]. The Affidavit of Confirmation attaches and incorporates the Affidavit as an exhibit identifying the real property transferred. [Doc. # 45, Ex. C]. The Motion also states that the impaired exemption amount for 2446 Maplewood is $10,000 of the $63,100.00, as there are apparently unpaid real estate taxes that would be an unavoidable first lien on the property. Notwithstanding this potential confusion, the court defers to the Motion and construes it as seeking avoidance of Kingston's judicial lien on the property at the address 2446 Maplewood Avenue, whatever that may consist of. The court does not see any reason to clarify exactly what that is for purposes of deciding the Motion. Nor has Kingston raised any issue about it.

Section 522 allows a debtor to elect exemptions under either federal law (as set forth in § 522(d)), or applicable state law, unless the applicable state law "does not so authorize." 11 U.S.C. § 522(b)(2). Ohio is such an "opt-out" state because its state law "does not so authorize." As permitted by § 522(b)(2), the Ohio legislature opted out of the federal exemptions provided in § 522(d) and exemptions must be claimed in accordance with Ohio law. *See* Ohio Rev. Code § 2329.662. As a result, Debtor properly claimed his exemptions at filing under Ohio law.

6

The exemption claimed by Debtor in his real property allows a person domiciled in Ohio to hold exempt from sale to satisfy a judgment "[t]he person's interest, not to exceed one hundred twenty-five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(1)(b).[3] Kingston's objection to applicability of this exemption is based on the plain language of the Ohio statute that allows exemption of an interest in real property that a debtor "uses" as a residence, in the present tense. Its blunt point is that as a result of Debtor's death on December 25, 2020, when Debtor filed the Motion on January 12, 2021, he neither had an interest in the real property at 2446 Maplewood, because it terminated automatically pursuant to the Transfer on Death Designation Affidavit, nor was he using it as a residence in the present tense any longer. *See In re Kimble*, 344 B.R. 546, 552-53 (Bankr. S.D. Ohio 2006). It follows, Kingston argues, that when the Motion was filed Debtor did not have any Ohio homestead exemption in the property that is impaired by its judgment lien.

There is a legal flaw in Kingston's merits argument because a debtor's entitlement to an exemption is determined by the circumstances on the date the petition is filed, for purposes of lien avoidance and otherwise. *See White v. Stump*, 266 U.S. 310, 313 (1924); *Myers v. Matley*, 318 U.S. 622, 628 (1941). It is not a floating determination that changes with the timing of application of the exemption during a bankruptcy case, be it a trustee's administration and decisions about liquidation of property, abandonment of property from the estate, redemption of personal property from a lien or, as here, avoidance of a judicial lien.[4] That is why the deadline for objecting to exemptions under Bankruptcy Rule 4003(b) is relatively quick. Entitlement to an exemption needs to be known early on.

A legion of case law stands for the proposition that a debtor's eligibility for exemptions is determined as of the petition date. *E.g., In re Rockwell*, 968 F.3d 12, 18 (1st Cir. 2020) (citing *White v. Stump* and *Myers v. Matley*), *cert. denied,* 141 S.Ct. 1372 (Feb. 22, 2021); *In re Billerman*, 88 B.R. 133, 135 (Bankr. N.D. Ohio 1988). It is thus well settled that a debtor's exemptions in real property survive

---

[3] Debtor did not have any dependents. [Doc. # 1, Schedule I, p. 28/50].
[4] There are pre--*Farrey* cases that can be read to make debtor having an interest in the property at issue at the time of lien avoidance an element of relief under § 522(f) rather than a constitutional standing requirement, or maybe mix the concepts up. *E.g.*, *In re Riddell,* 96 B.R. 816, 817-18 (Bankr. S.D. Ohio 1989) and cases cited and discussed therein. The statute avoids "the fixing" of a lien and *Farrey* specifies that one element of relief under § 522(f) is that debtor had an interest in in the property claimed exempt *when the lien attached*. While the court generally agrees with the outcome of those cases, having an interest in property when lien avoidance is sought is properly treated as a standing issue which must be revisited at all stages of a proceeding. It might seem like a distinction without a difference in the outcome. But, for example, if nobody was aware that Debtor had died when the Motion was filed and the court granted it, albeit without jurisdiction to do so, the ability to have the order vacated under Rule 60(b) may be very different if the lack of an interest in the property at avoidance is treated as an element of the claim on the merits instead of as a matter of the court's jurisdiction, which this court believes it is. As a standing issue, it could be raised even on an appeal.

the debtor's death. *Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 939 (8th Cir. 1990) ("Peterson's homestead exemption became fixed and vested on the date of filing. Peterson's death, which occurred eight months after the date of filing, is irrelevant for determining his right to a homestead exemption."); *see, e.g.*, *In re Irwin*, 338 B.R. at 851; *In re Doyle*, 209 B.R. 897, 907 (Bankr. N.D. Ill. 1997); *In re Combs*, 166 B.R. 417, 421 (Bankr. N.D. Cal. 1994); *In re Costello*, 72 B.R. 841, 844 (Bankr. E.D.N.Y. 1987); *In re Friedman,* 38 B.R. 275, 275-76 (Bankr. E.D. Pa. 1984).

The Ohio exemption statute also states:

(D) For purposes of this section, "interest" shall be determined as follows:
 (1) *In bankruptcy proceedings, as of the date a petition is filed* with the bankruptcy court commencing a case under Title 11 of the United States Code.

Ohio Rev. Code § 2329.66 (D)(1)(emphasis added).

Kingston might point to *Riddell* in support of its argument that Debtor's death terminated his exemption in the property at 2446 Maplewood. While the court agrees with the result of *Riddell*, which was to deny Debtor's motion to avoid a judgment lien in real property that had been sold post-petition, the reasoning conflates Debtor's standing to file the motion with applicability of the homestead exemption.

In *Riddell*, debtor sold her residence post-petition and later reopened the case to avoid a judgment lien on property that she no longer owned when she filed her motion to avoid the lien. The bankruptcy court found that debtor could not meet the conditions for avoidance because she no longer had an interest in the real property, which it characterized as the first condition for avoidance. The court's bottom line was that "[s]he [debtor] lacks standing to avoid the lien and fails the first criterion." It cited the Ohio exemption statute's provision that an "interest" under § 2329.66 in a bankruptcy case must be determined as of the date of filing of the petition. But then the court in *Riddell* fails to explain why its plain terms did not apply and defaults to an explanation that incorrectly and unpersuasively depends on the timing of the application of the exemption. All the court in *Riddell* needed to say was "[s]he therefore lacks standing to avoid the lien," which is also the bottom line here

When there were no objections, by Kingston, the Chapter 7 Trustee or any other party in interest, filed to Debtor's claimed exemption in the real property at 2446 Maplewood Avenue, the exemption became final. *See Law v. Siegel,* 571 U.S. 415,423 (2014). *Contra In re Irwin,* 338 B.R. at 350 (pre-*Law v. Siegel* ruling). It is not subject to later attack within the procedural framework of a post objection deadline motion to avoid a judicial lien as Kingston suggests. Arguments, which are not available here, could still be made about the character of the lien as judicial, application of the statute's impairment formula or time of lien attachment. But Debtor's entitlement to the Ohio homestead exemption properly

8

claimed at filing in scheduled property became fixed and vested as of the filing of the petition once there were no objections to it timely filed and sustained. Kingston's challenge to applicability of the Ohio homestead exemption to the real property at 2446 Maplewood amounts to an untimely objection to the exemption. It is unavailing to that extent.

**Did a Person with Standing File the Motion To Avoid Lien?**

The Motion opens "[n]ow comes the Debtor, Robert L. Moody, Jr.," [Doc. # 31, p. 1/3], and concludes "Debtor prays for an order against Kingston's Care Center of Perrysburg LLC avoiding and canceling the judicial lien in the above-mentioned property," [*Id.,* p. 2/3]. But there is no dispute that Debtor was already deceased by January 12, 2021, when counsel filed the Motion, having died on December 25, 2020. Counsel was clearly not representing Debtor at that time. Nor has Counsel identified any person or party on whose behalf he was acting as having stepped properly into Debtor's shoes to assert his exemption rights in the property at 2446 Maplewood.[5]

That Debtor died before the Motion was filed did not automatically end the reopened Chapter 7 case or the Motion. The death of a debtor in a Chapter 7 case does not, in most cases, interfere with the administration of the bankruptcy estate.[6] Federal Rule of Bankruptcy Procedure 1016 addresses the death of a debtor as follows:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. . .

The legislative history supporting Rule 1016 also notes the following:

> Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, *only property exempted from property of the estate or acquired by the debtor after commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate* . . .

9 COLLIER ON BANKRUPTCY ¶ 1016.02 n. 10 (16th ed.), citing H.R. Rep. No. 959, 95th Cong., 1st Sess. 376-68 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 82-83 (1978), *reprinted in* App. Pts 4(d)(i) & 4(e)(i) *infra*. (Emphasis added).

The treatise further advises "Rule 1016 carries out this congressional intent that the chapter 7 debtor's probate estate should normally receive the benefit of the debtor's exemptions and discharge, and

---

[5] One wonders how an offer to settle the Motion would have been handled. This is the manner in which Kingston has raised the issue, by focusing on Counsel's authority to act.
[6] Laura B. Bartell, BANKRUPTCY AND THE DECEASED DEBTOR: RULE 1016 IN PRACTICE, 94 Am. Bankr. L.J. 523, 526-30 (2020).

that the nonexempt property should be administered in the bankruptcy estate." *Id*. at ¶ 1016-3, n 11, citing *Moon v. Bauer (In re Bauer)*, 343 B.R. 234 (Bankr. W.D. Mo. 2006). This is because the debtor qualifies for the exemption on the petition date. *In re Depascale*, 496 B.R. 860, 867-68 (Bankr. N.D. Ohio 2013) (citing cases in support construing the Ohio homestead exemption). *See also In re Brown*, 807 F.3d 701, 709 (5th Cir. 2015) (noting where a debtor dies during the pendency of his bankruptcy case, he does not become ineligible for exemptions that were available to him on the petition date and post-petition death has no effect on the exemptions available).[7]

In this case, however, the facts create a jurisdictional issue that precludes prosecution of the Motion. As the parties stipulated, by the time the Motion was filed, Debtor had no rights in the property at 2446 Maplewood to which Kingston's lien attached and which Counsel asks to avoid. By operation of Ohio law, when Debtor died on December 25, 2020, his interest in that property automatically passed under the Transfer on Death Designation Affidavit to Robert L. Moody III and Pascha Williams, with a life estate to Vanessa Jenkins. Ohio Rev. Code § 5302.22(C)(1) ('If an individual who owns real property or an interest in real property as a sole owner… executes a transfer on death designation affidavit, upon the death of that individual, title to the real property or interest in the real property specified in the affidavit vests in the transfer on death beneficiary or beneficiaries designated in the affidavit."). The automatic transfer of the 2446 Maplewood property by operation of Ohio law upon Debtor's death precludes someone from acting in his stead to seek avoidance of the Kingston judgment lien as impairing his exemption. By the time the Motion was filed, Debtor no longer had any legally protected interest in the 2446 Maplewood property, not just because he had died, but because title to the property transferred automatically upon his death. There was no longer any injury in fact to Debtor by the judicial lien when the Motion was filed. Only the interests of non-Movant, non-debtor, non-dependent third parties named in the Affidavit are furthered by the Motion. *In re Kennedy,* No. 08-81687, 2016 WL 6649200, and n. 5

---

[7] Even though an exemption survives a debtor's death, there must still be a proper party to enforce it in the late debtor's stead, be it an executor or administrator in a probate proceeding should there be one, or a next of kin. The concepts of Article III standing and real party in interest are distinct.

A motion brought under Bankruptcy Rule 4003(d) is a contested matter under Federal Rule of Bankruptcy Procedure 9014. Rule 9014(c) specifies some of the Part VII adversary proceeding rules that apply to contested matters, and they include Bankruptcy Rule 7017, which incorporates Rule 17 of the Federal Rules of Civil Procedure. Rule 17(a)(1) directs that "[a]n action must be prosecuted in the name of the real party in interest" and the list of parties who may sue without joining the person for whose benefit the action is brought include an executor and an administrator. Fed. R. Bankr. P. 7017; Fed. R. Civ. P. 17(a)(1); *In re Irwin*, 338 B.R. at 848-49 (upon debtor's death, his daughter was determined to be a proper representative under state law to bring a motion to avoid judicial lien and motion to substitute, as the right to exemption as well as the right to avoid the lien is determined as of the petition date). *See In re Mobley*, No. 99-92579, 2004 WL 377679 (Bankr. C.D. Ill. 2004) (where a Chapter 7 proceeding was reopened by the administrator of debtor's probate estate, the court determined the administrator had standing in the late debtor's stead to pursue the motion to avoid lien).

(Bankr. M.D.N.C. Apr. 6, 2016) (like this case but under North Carolina law, the personal representative for the decedent debtor's probate estate lacked standing to avoid a judicial lien where the debtor transferred real property to a tenancy by the entireties and then died before the judicial lien was avoided, because the real property became the non-filing spouse's property by operation of law upon his death); *In re Riddell*, 96 B.R. at 818. *Cf. In re Krantz*, No. B.R. 10-28557, 2012 WL 6028846, at *3-*4 (Bankr. D. Utah Nov. 29, 2012) (debtors who sold and repurchased their home, and then filed a motion to avoid a judicial lien, had standing to avoid it because they owned the property at that time and debtors were entitled to lien avoidance as of the petition date).

Kingston's judicial lien remained on the property when it transferred to the beneficiaries under the Affidavit upon Debtor's death. The status of the exemption and its avoidance became meaningless on transfer of title because the judicial lien no longer affected Debtor, dead or alive. If Kingston's judicial lien is not avoided and it forecloses on the real property now owned by third parties, no interest of Debtor will be injured. Thus once title to the property transferred, there could no longer be any injury in fact to Debtor.[8]

There is authority contradictory to this conclusion. The most prominent example of cases that hold a debtor (assuming in this case the real party in interest problem could be solved) does not have to own the subject property when lien avoidance is sought is the Ninth Circuit case *Chiu*. In *Chiu*, debtors also failed to seek to avoid a judicial lien encumbering their real property before their Chapter 7 case closed. After the case closed, debtors sold the property but were informed at closing that they would have to pay the lien or have $48,000 withheld from the sale proceeds. The sale was completed and $48,000 deposited in escrow on account of the judicial lien. Debtors then reopened their Chapter 7 case and filed a motion to avoid the judicial lien. Reasoning based on *Farrey* that the only relevant temporal inquiry was whether debtors had an interest in the property when the lien attached, the Ninth Circuit held that "the debtor need not have an interest at the time it moves to avoid" and affirmed avoidance of the lien. *Id.*, 304 F.3d at 909.

It is tempting just to distinguish *Chiu* because there are material differences in the facts from this case despite the broad holding. There are other cases, albeit some with different fact patterns, that discuss and sometimes embrace, sometimes distinguish the holding in *Chiu*. In *Chiu,* the debtors were still alive

---

[8] In comparison, if the Affidavit transferee owners or life estate holder sought to avoid the judicial lien in any prospective Chapter 7 cases of their own, they would have standing to seek to do so because Kingston's lien attaches to their property interests and it could impair any properly claimed exemption. The court could redress that injury by avoiding the judicial lien. But the merits of their request under § 522(f) would be at issue if their status as beneficiaries under an Ohio transfer on death affidavit did not constitute an interest in property at the time the judicial lien attached as required by *Farrey*, an issue the court need not and will not address. *See In re Harris*, No. BG 14-04686, 2014 WL 7361834 (Bankr. W.D. Mich. Dec. 23, 2014) (judicial lien did not attach to month-to-month tenancy under Michigan law).

11

when they sought lien avoidance. As explained above, that fact is not necessarily determinative here. And there were still escrowed proceeds from the sale of the property when the debtors filed their motion to avoid the lien. As some courts have observed, those proceeds could be considered a substitute for the exempt property to which the exemption attaches and that the lien was therefore still in force on an interest of debtors in property. *E.g., In re Wilding*, 475 F.3d 428, 432 (1st Cir. 2007). But the Ninth Circuit did not seem to care about that fact in *Chiu*. Given the reasoning in *Chiu*, with which the court agrees as a matter of the merits under § 522(f), and its basic holding, those factual distinctions are not persuasive here.

Rather, the court has more fundamental disagreements with *Chiu,* one of recent provenance, that fatally injure its persuasive value. First, the issue of Article III standing is never addressed as such and seems to have been ignored. Other courts following *Chiu* acknowledge earlier bankruptcy court cases like *Vitullo* and *Riddell* that reached the opposite result, which are then simply dispatched with the unpersuasive conclusion that "the Court does not find the reasoning in these cases persuasive." *E.g., In re Krantz,* 2012 WL 6028846 at n. 5. The standing question needs to be addressed because it implicates jurisdiction. If in *Chiu* the debtor's exemption and the judicial lien continued in the still-extant proceeds, which is not explicitly stated, then debtors would have a redressable injury in fact that afforded them standing to seek relief from the bankruptcy court. But other courts following *Chiu* where the property has been transferred and there are no proceeds left at the time lien avoidance is sought also do not address standing.

Beyond the facts in *Chiu* that might confer standing on the debtors despite no longer owning the real property when they sought lien avoidance, subsequent cases can be understood to offer an explanation for standing. When debtors no longer own the property on which the lien they seek to avoid is attached, some cases construe that what courts are doing is avoiding the lien *nunc pro tunc* to the petition date, when debtors' exemption rights were fixed. One such court is the First Circuit Court of Appeals in *Wilding*. *E.g., In re Wilding,* 475 F.3d at 433; *In re Kennedy*, 2016 WL 6649200 at *5.

While the First Circuit in *Wilding* did distinguish *Chiu* because there were still proceeds of the real property in escrow when the motion to avoid lien was filed, it decided that a bankruptcy court could nevertheless use its equitable powers under § 522(f) to issue an order avoiding a lien *nunc pro tunc* to the petition date where the judicial lien no longer attached to a debtor's real property by the time lien avoidance was sought. *In re Wilding*, 475 F.3d at 433. As a result, a creditor would have the right to assert equitable defenses such as laches, fraud or prejudice to oppose a motion to avoid a lien. This is now a questionable use of a bankruptcy court's equitable authority given the Supreme Court's subsequent reiteration of the limits of that power in *Law v. Siegel*.

12

But there is no question that the holding in *Wilding* justifying that what a bankruptcy court is doing in avoiding a lien attached to property a debtor no longer owns is entering an order *nunc pro tunc* to the petition date, or to a date upon which a debtor still owned the property, is indefensible under the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S.Ct. 696 (2020). A *nunc pro tunc* order means a "now for then order." Federal courts may issue *nunc pro tunc* orders "to reflect the reality of what has already occurred" on the court record and "presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Id.* at 699-701 (internal quotation marks omitted). As *Acevedo* emphasizes, *nunc pro tunc* orders cannot make the record what it is not. But that is what courts like the First Circuit in *Wilder* and maybe the Ninth Circuit in *Chiu* are doing. To the extent it was not clear before, it is now clear under *Acevedo* that such cases represent an improper use of *nunc pro tunc* orders by federal courts. As in this case, nothing around avoidance of Kingston's judicial lien occurred of record before the property transferred from Debtor's title and before Counsel filed the Motion, let alone a mistake on the record made by the court.

The court not being persuaded by cases holding or seeming to hold to the contrary, even if a party qualified to step into the Debtor's shoes did so, the late Debtor lacks standing to avoid Kingston's lien because he (or any proper representative of his) has not suffered a concrete injury by its continued attachment to the real property at 2446 Maplewood. Notwithstanding that Debtor's exemption rights would be determined as of the filing of his petition, as a result of automatic transfer of title to the property under the Affidavit before the Motion was filed, granting it will not protect or redress those rights or interests. Nor will denying it harm any rights or interests of the late Debtor in the property. Notwithstanding the fixing of exemption rights at filing of the petition, a debtor must still have the interest in exempt property to which the lien attached under *Farrey* at the time a judicial lien is sought to be avoided by him or someone standing in his shoes.

## CONCLUSION

For the foregoing reasons, the court finds that the Motion has not been filed by a party with standing to seek avoidance of Kingston's judgment lien and the court lacks jurisdiction to adjudicate the pending Motion to avoid lien under 11 U.S.C. § 522(f). Accordingly, the Motion to Avoid Judicial Lien on Real Estate [Doc. # 31] will be dismissed by a separate order in accordance with this Memorandum of Decision.